# IN THE COURT OF APPEALS OF IOWA

No. 19-0182
Filed April 3, 2019

IN THE INTEREST OF A.K. and P.K.,
Minor Children,

R.K., Father,
    Appellant.
_____

Appeal from the Iowa District Court for Cherokee County, Mary L. Timko, Associate Juvenile Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Dean A. Fankhauser of Fankhauser Rachel, PLC, Sioux City, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Lesley Rynell of Juvenile Law Center, Sioux City, guardian ad litem for minor children.

Considered by Doyle, P.J., Mullins, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**MULLINS, Judge.**

A father appeals the termination of his parental rights. He challenges the sufficiency of the evidence supporting the grounds for termination, asserts termination is not in the children's best interest, and requests the application of a statutory exception to termination. The father also argues the State failed to make reasonable efforts to reunify him with the children.

All issues on appeal were decided following a combined permanency and termination-of-parental-rights hearing. The hearing was held over three days, ending December 11, 2018, as reflected in the termination order. The record only contains transcripts for the proceedings on November 28 and December 11.[1] Iowa Rule of Appellate Procedure 6.803(1) requires that "[i]f the appellant intends to urge on appeal that a finding or conclusion is unsupported by the evidence or is contrary to the evidence, the appellant must include in the record a transcript of all evidence relevant to such finding or conclusion." "It is the appellant's duty to provide a record on appeal affirmatively disclosing the alleged error relied upon," and "[t]he court may not speculate as to what took place or predicate error on such speculation." *In re F.W.S.*, 698 N.W.2d 134, 135 (Iowa 2005). There is authority that would support us refusing to exercise our appellate review of this case. *See, e.g., id.* at 135–36; *In re I.M.*, No. 13-0821, 2014 WL 4225169, at *2 (Iowa Ct. App.

---

[1] The father's attorney filed a combined certificate on January 31, 2019, and ordered the transcripts from all three days of the proceedings. One week later, the father's attorney filed an amended combined certificate, which only ordered transcripts from November 28 and December 11. No explanation is provided in the record concerning the lack of a transcript for the November 14 proceedings.

Aug. 27, 2014). Having examined the record and the issues raised on appeal, we choose to decide this appeal based on the available record.

## I.      Background Facts and Proceedings

R.K., the father, and K.A., the mother, are the parents of A.K., born in 2012, and P.K., born in 2014. The family came to the attention of the Iowa Department of Human Services (DHS) in February 2017 after reports of illegal drug use by the parents and domestic abuse. The father reportedly used methamphetamine while caring for the children and hit the mother while the children were present. Further, the mother was aware of the father's drug use and allowed the father to drive the children while actively under the influence of methamphetamine. Both parents admitted using methamphetamine, and the father tested positive for both methamphetamine and amphetamines. Further, A.K.'s hair-stat test resulted in positive results for amphetamines and methamphetamine. After its investigation, DHS returned founded child-abuse assessments against both parents for denial of critical care.

The children remained in the parents' care, and in-home services were provided. Both parents participated in substance-abuse evaluations, which resulted in the recommendation of intensive outpatient services for the father and mental-health counseling for the mother. The father did begin attending services several times per week but blamed the mother for DHS's involvement in their lives. Further, he repeatedly claimed that he had been sober since October 2016 despite his positive test for methamphetamine.

The juvenile court adjudicated the children in need of assistance (CINA) in May. In August, during the week prior to the dispositional hearing, the mother took

the children out of the home and disappeared. She returned with the children on the date of the hearing. Prior to the commencement of the hearing, the mother was given a drug test. She tested positive for methamphetamine. Safety planning required DHS to remove the children from her care and for the mother to leave the home. The children remained with the father. Following the hearing, the father took two drug tests. The first was deemed invalid for being diluted. After participating in a hair-stat test, the father admitted the test would reflect his use of methamphetamine, specifically following the dispositional hearing. He also reported that the mother had been using methamphetamine the entire time of DHS's involvement and that he had covered for her. The mother subsequently left the county to live with her relatives due to reported domestic violence.

Based upon the father's admission of drug use, the juvenile court granted an emergency removal of the children. The mother returned to the family home after her drug test was determined to be a false positive, but the children remained outside of the home. The juvenile court considered the date of removal of the children from both parents' care to be August 31. The juvenile court transferred custody of the children to DHS for foster-care placement. DHS provided both parents supervised visitation and phone calls.

Initial visitations went well but by the end of October and into early November, the father became increasingly agitated and frustrated with the children's removal and DHS involvement. This led to verbal confrontations with the foster family, DHS, and the mother. After an argument with the mother in early November, the father smashed her cell phone and left the home with all of the parties' keys and access to bank accounts. The father also remained in a "state

of anger" during the following visitation. However, future visits improved and, in late December, visitation for both parents was moved to semi-supervised. However, the father's frustrations continued to affect visitations on occasion, as he would vent his frustrations in the presence of the children. This ultimately led to the visitation reverting to supervised in mid-January 2018 after the parents engaged in a profanity-laced argument in the children's presence, which required the supervision provider to rush over to their house and end the visit.

The father struggled with his participation in substance-abuse treatment, as his attendance was sporadic. When he did attend, his mood was often angry. While the mother denied any physical abuse at the hands of the father, she admitted he was emotionally abusive and restricted her contact with others. The father tested positive for amphetamines and methamphetamine in March and methamphetamine in April. The relationship between the mother and father continued until just prior to the April review hearing. DHS received reports of two domestic incidents in March during which the father was verbally assaultive toward the mother. The mother contacted law enforcement after the second incident, left the house, and subsequently moved in with the maternal grandmother. The domestic incidents led to a no-contact order between the parents and, from then on, the parents participated in separate visits.

At the end of May, DHS suspended the father's in-person visitations after the father became so enraged at the end of a visit that he used profanity and punched a window while in the presence of the children. DHS noted the father's increasing agitation and frustration during supervised visits prior to the incident, including a report that the father became angry and used profanity during a

preschool graduation for P.K. After the suspension, DHS provided supervised phone contact with the children. P.K. often refused to speak with the father.

DHS conducted a home study and approved the maternal grandmother and step-grandfather for placement. In early June, DHS placed the children with the grandparents. At that time, the mother still lived in their home. In August, the mother moved into her own apartment.

The father moved for supervised visitation to resume, and the juvenile court set the matter for hearing in August. By that time, the father had moved to another town. The juvenile court requested extra security for the hearing due to the father's threats against the court and service providers if he did not receive his children back. However, the father did not appear at the hearing, but he was represented by his attorney. The juvenile court filed its decision the next day, finding the father's behavior at visitations became increasingly aggressive and volatile despite the presence of the children, law enforcement, and members of the public. The father had been informed both verbally and in writing of the expectations he needed to complete in order for visitation to be reinstated, however he failed to complete them. The juvenile court further found that the father was unable to follow expectations during phone contact with the children. As a result of the findings, the juvenile court denied the father's request. Supervised phone calls continued. P.K. continued to refuse to speak with the father a majority of the time. P.K. also made comments about hating the father.

In late August, police stopped the father for speeding. Following their investigation, the police arrested the father for operating while under the influence and driving while suspended. During the traffic stop, the father exhibited signs of

impairment and refused chemical testing. In September, DHS received reports that the father had a new girlfriend. The girlfriend's criminal history included several drug-related charges and convictions. She was also arrested for possession with the intent to deliver methamphetamine in connection with over $20,000 worth of crystal methamphetamine. DHS reported that state charges were dismissed in connection with this arrest but federal charges were pending. The father claimed he knew nothing about her past when he started seeing her and when he found out, he ended the relationship. The father was arrested in December after using a baseball bat to break the car window of the girlfriend's friend who was assisting her move out of the father's home.

The children remained with the maternal grandmother and step-grandfather until October when they were returned to the mother's care for a trial home visit after she made extensive improvement. A.K. has been seen by psychologists regarding aggressive behaviors, including threats of self-harm and harm to P.K.

The termination-of-parental-rights hearing was held over three days: November 14, November 28, and December 11, 2018. On January 15, 2019, the juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(d), (e), (f), and (*l*) (2018). The father appeals.

## II.    Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018).

> We use a three-step analysis to review termination of parental rights. First, we "determine whether any ground for termination under section 232.116(1) has been established." If we determine "that a ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2)

supports the termination of parental rights." Finally, if we conclude the statutory best-interest framework supports termination, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights."

*Id.* at 472–73 (quoting *In re M.W.*, 876 N.W.2d 212, 219-20 (Iowa 2016)).

**III.    Analysis**

    **A.    Sufficiency of the Evidence**

First, the father appears to challenge the sufficiency of the evidence supporting the statutory ground for termination under section 232.116(1)(f). However, he does not contest the existence of grounds for termination under paragraphs (d), (e), or (*l*). "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Because the father does not dispute the existence of the grounds under paragraphs (d), (e), or (*l*), we do not need to discuss this step. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

    **B.    Best Interests**

The father contends termination is not in the children's best interests. In determining best interests, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). The children have been removed from the father's care since August 2016. At the time of the termination hearing, he had lost face-to-face contact with the children for nearly six months due to becoming angry during a visit and breaking a window in the children's presence. In the midst of the termination

proceedings, the father was arrested for breaking a car window with a baseball bat. There was also evidence that A.K. has been affected by what has occurred in this case, as A.K. has exhibited out-of-control anger and aggressive behaviors. In A.K.'s psychological evaluation report, it was noted that A.K. threatens self-harm or to harm P.K. A.K. had, on average, three outbursts per week with behavior that was disproportionate to the situation. Further, between outbursts, A.K. is angry and irritable. Both children have expressed hating the father, and P.K. refused to speak with the father during most supervised phone calls. During the termination hearing, the father downplayed the effect his temper has had on the children and the case. On our de novo review, we find that termination is in the best interests of the children.

  C.  Statutory Exception to Termination

  The father contends the juvenile court should have applied the statutory exception contained in Iowa Code section 232.116(3)(a), which provides the court need not terminate the parental relationship if "[a] relative has legal custody of the child." Here, the relative is the children's mother. It is the father's burden to show the provision applies. *See A.S.*, 906 N.W.2d at 476 ("[T]he parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3)(a)"). The factors under 232.116(3) which allow the court to avoid terminating parental rights "are permissive, not mandatory." *Id.* at 475 (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). "We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (quoting *A.M.*, 843

N.W.2d at 113). On our de novo review, we find the record is replete with evidence that the father has not shown any ability to co-parent with the mother and the relationship between the two parents is extremely toxic. Applying the exception under section 232.116(3)(a) would subject the children to that relationship again. We decline to do so.

>        D.      Reasonable Efforts

The father claims the State did not engage in reasonable efforts to reunite him with the children. He contends that he requested but was not provided assistance with transferring his services after he moved, which resulted in a delay in treatment. He argues this delay was not his fault but it was still used as a reason for termination. Further, he contends DHS barred him from visitation and contact with the children.

DHS is required to make reasonable efforts to return children to their home, with the paramount concern of the children's health and safety. Iowa Code § 232.102(6)(b). Reasonable efforts includes services offered to allow the children to return safely to the family home or eliminate the need for removal. *Id.* § 232.102(12)(a). The "reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by the DHS to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

The father argues that the delay in his treatment during the time he moved was used as a reason for termination. We do not find that to be the case. Instead, we find the juvenile court understood how the father used his treatment as a means

to avoid drug testing through DHS and conversely used DHS as a means to avoid testing through his treatment. The record reflects the father informed each agency that the other was conducting tests because he wanted to avoid being tested again. Further, while the father argues DHS refused to assist in transferring services, the record reflects that DHS provided him with the contact information for services in his new area and explained that he could contact those services or could request DHS to assist. The record does not reflect the father requested assistance in setting up services, therefore, the father needed to take the initiative to contact service providers and set up appointments. There is no evidence in the record that the father requested additional or different service provider information, nor did the father make the court aware of wanting different or additional services.

With respect to visitation, DHS suspended the father's face-to-face visits with the children as a direct result of his own actions. The father's aggressive behavior had been building and manifesting in a number of visits prior to the May incident where he smashed a window while in the presence of the children. After the suspension, DHS gave the father specific expectations to fulfill in order to resume face-to-face contact; however the father did not meet those expectations. The father was provided phone contact with the children, but he struggled to consistently be appropriate during the phone calls. Further, the father engaged in another window-breaking incident in the midst of the termination proceedings. On our review, we conclude the State did not fail to make reasonable efforts. Accordingly, we affirm the termination of the father's parental rights.

**AFFIRMED.**